IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KELLY FUERY, DEBRA SCIORTINO and NICOLE TOMASKOVIC | ) ) ) | No. 07 C 5428 |
| Plaintiffs, | ) ) ) | |
| | ) | The Honorable William J. Hibbler |
| v. | ) ) ) | |
| CITY OF CHICAGO, *et al.* | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On June 24, 2007, the plaintiffs were involved in a physical altercation with defendant William Szura. Subsequently, the plaintiffs were arrested and charged with battery. On October 30, 2007, the plaintiffs sued five law enforcement officials and the city of Chicago alleging that the defendants violated their civil rights. In response, the defendants filed a motion to stay the civil case until the battery charges pending against the plaintiffs are resolved. For the reasons set forth below, the defendants' motion to stay is GRANTED.

### I. Factual Background

A. *The Altercation*

The following facts are taken from the plaintiffs' complaint. On June 24, 2007, the plaintiffs came to the City of Chicago to attend the Gay Pride Parade. (Compl. ¶ 17.) At approximately 7:30 p.m., the plaintiffs were headed home in two separate vehicles.

1

Sciortino and her life partner Fuery drove together; Tomaskovic was alone. (Compl. ¶ 18.) While driving south on Interstate 55, Sciortino and Fuery pulled behind a vehicle traveling 30 miles per hour in the far left lane of traffic. (Compl. ¶ 19.) The plaintiffs later learned that the driver of the vehicle was one of the defendants, off-duty Chicago Police Officer William Szura. (*Id.*) Fuery beeped her horn because Szura was driving slowly in the far left lane. (Compl. ¶ 20.) Szura immediately slammed on his breaks and came to a complete stop on the expressway. (Compl. ¶ 21.) Fuery attempted to get away from Szura by moving to the middle lane, but Szura changed lanes and refused to let her pass. (Compl. ¶ 21.) Fuery made numerous attempts to get away from Szura by changing lanes, but each time Szura would cut her off and move in front of her vehicle. (Compl. ¶¶ 24-25.) Szura alternated between speeding up and slamming on his brakes in order to block Fuery's path. (*Id.*) Eventually, Szura used his vehicle to force Fuery to pull over to the shoulder of the expressway. (Compl. ¶ 26.)

Szura, dressed in a plain white shirt and blue jeans, jumped out of his vehicle and approached Fuery's door. (Compl. ¶¶ 27-28.) Fuery and Sciortino also exited their vehicle. (Compl. ¶ 29.) According to the plaintiffs, the altercation quickly escalated. Szura screamed at Fuery and Sciortino, spat in their faces and aimed a gun at them. (Compl. ¶¶ 30-33.) Szura began to beat Fuery and Sciortino, striking them in the head, face and neck. (Compl. ¶¶ 37-39.) The plaintiffs further allege that while Szura was beating them, he was yelling "fucking dyke" and "fucking bitch." (Compl. ¶40.) When plaintiffs asked why he was hitting two women, Szura allegedly replied: "You are not women. You are fucking dykes." (Compl. ¶ 41.) At some point during the altercation, plaintiff Nicole Tomaskovic pulled over to the side of the road to help her friends.

(Compl. ¶ 43.) When Tomaskovic encountered Szura, he allegedly punched her in the face and placed her in a choke hold. (Compl. ¶¶ 50- 51.)

Two Illinois State Troopers eventually arrived at the scene, and Szura promptly informed them that he was a Chicago Police Officer. (Compl. ¶ 56.) The State Troopers then handcuffed Tomaskovic and Sciortino. (Compl. ¶¶ 57-59.) When defendant Senior Master Sergeant Wentworth arrived on the scene, Fuery tried to explain how they were beaten without provocation, but Wentworth stated in effect: "We're going to believe [Szura] over you. He is one of our men." (Compl. ¶ 60.) Wentworth and Szura both laughed at the plaintiffs. (Compl. ¶ 61.)

Wentworth ordered all three women to be arrested and charged with battery of Szura. (Compl. ¶ 67.) Wentworth told Sciortino that despite her requests, she could not press charges against Szura. (Compl. ¶ 66.) The plaintiffs also claim that defendant State Troopers Aragones, Miloslavich and Hitney drafted false police reports and fabricated evidence to cover for Szura. (Compl. ¶¶ 68-70.) The Troopers ordered the plaintiffs into a squad car and drove them to the Chicago Police Station. (Compl. ¶ 73.) Szura was allowed to drive away despite the fact that he allegedly "reeked of alcohol" and was slurring his speech. (Compl. ¶ 74.) At the station, the police interrogated the plaintiffs for approximately 12 hours. (Compl. ¶ 79.) While the plaintiffs were being held for booking and processing, Szura sat at a desk and mocked the plaintiffs. (Compl. ¶ 77.)

The following morning the plaintiffs went to the hospital to have their injuries examined. (Compl. ¶ 80.) Sciortino suffered a concussion, post-concussion headache, cervical strain, back pain, sprained wrist and a fractured rib. (Compl. ¶ 81.) Tomaskovic suffered a cervical strain and lumbar muscular strain and missed three days of work.

(Compl. ¶ 82.) Fuery suffered a head injury and blunt trauma to her left ear. (Compl. ¶ 83.) All three plaintiffs allege the ordeal caused them emotional trauma. (Compl. ¶ 84.) On June 26, 2007, Sciortino called the Chicago Police Department's Office of Professional Standards to report her alleged mistreatment. (Compl. ¶ 85.)

The battery charges against the plaintiffs are still pending in the Circuit Court of Cook County, Illinois.

B.  *The Complaint*

On October 30, 2007, the plaintiffs sued the defendants in federal court asserting their civil rights had been violated. The complaint contains the following counts premised on federal law: (1) Equal Protection – 42. U.S.C. § 1983; (2) *Monell* Liability – 42 U.S.C. § 1983; (3) Conspiracy – 42 U.S.C. §§ 1983, 1985; (4) Excessive Force – 42 U.S.C. § 1983; (5) False Arrest/Unlawful Detention – 42 U.S.C. § 1983. The complaint contains the following state law supplemental claims: (6) Violation of the Illinois Hate Crimes Statute; (7) Assault and Battery; (8) False Arrest/Imprisonment; (9) Negligent Supervision by the City of Chicago; and (10) Indemnification.

## II.   Analysis

The defendants request that this lawsuit be stayed until the battery charges pending against the plaintiffs are resolved in state court. Specifically, defendants argue this lawsuit should be stayed under the abstention doctrine pronounced in *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971). In *Younger*, John Harris was charged with violating the California Criminal Syndicalism Act which prohibited teaching or advocating the commission of a crime as a means of accomplishing political or economic change. *Id.* at 39. The federal district court enjoined Harris's state court prosecution

4

because the statute arguably inhibited free speech in violation of the First Amendment. *Id.* The Supreme Court reversed and held that absent extraordinary circumstances, federal courts should abstain from enjoining state court criminal proceedings: "Since the beginning of this country's history Congress has, subject to a few exceptions, manifested a desire to permit state courts to try state cases free from interferences by federal courts." *Id.* at 53. Issues of comity were at the forefront of the Court's analysis:

> This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "comity" that is, a proper respect for state functions, a recognition that ... the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Id.* at 44. Thus, the Supreme Court allowed Harris's prosecution in the California state court to proceed.

The question in *Younger* was whether a federal district court should enjoin a state criminal proceeding. The Court, however, did not address whether a federal court should stay *its own* proceeding in deference to a pending criminal case. In *Simpson v. Rowan*, the Seventh Circuit provided guidance on this issue. 73 F.3d 134 (7th Cir. 1995). In May 1992, Robert Simpson was charged with felony murder in connection with the robbery of a grocery store and the shooting death of one of its customers. *Id.* at 135. While awaiting trial in the Circuit Court of Cook County, Simpson filed a civil rights complaint against the arresting officers in addition to the state's attorney. *Id.*

Simpson's complaint alleged, among other things, that he was falsely arrested, illegally searched and denied equal protection of the laws. *Id.* In June 1993, Simpson was convicted in the Circuit Court of felony murder and appealed his death sentence to the Illinois Supreme Court. *Id.* At this point, the federal district court abstained from

5

granting relief with respect to Simpson's civil rights claims. The district court held that adjudication of the complaint would "necessarily involve the very issues to be considered on appeal in the state court proceeding." *Id.* (internal citations omitted). The Seventh Circuit agreed with this assessment and held that the twin concerns of comity and federalism spelled out in *Younger* necessitated a stay of the federal proceedings:

> [I]f Simpson were to prevail on his federal damages action before the conclusion of the state supreme court proceedings, the resulting federal judgment might undermine the supreme court's consideration of Simpson's constitutional defenses to his criminal conviction. The policy against federal interference with pending state proceedings would thus be frustrated as much by a damage award as it would by either an injunction or a declaratory judgment.

*Id.* at 138.

Here, as in *Simpson*, the Court has been asked to stay a civil rights complaint until the related criminal charges are adjudicated in state court. As a threshold matter, the Court must first determine whether there is any potential for its ruling on the civil claims to conflict with the state's ruling on the criminal charges. *Id.* In this case, the potential for conflict is pellucidly clear. For example, suppose on Monday morning this Court held that the plaintiffs were falsely arrested for battery and entitled to monetary damages. On Monday afternoon, the state court could issue a ruling finding that the plaintiffs are guilty of battery, and thus, were lawfully detained. Certainly, this is the type of federal-state friction that the Seventh Circuit has directed courts to avoid. *E.g., Robinson v. Lother*, 2004 U.S. Dist. LEXIS 17659, No. 04 C 2382, 2004 WL 2032120, at *2 (N.D. Ill. Sept. 1, 2004) (noting that *Younger* abstention is appropriate where the federal court could "beat the state action to judgment and either undermine, or preclude the state's consideration of some issues.") (internal citations omitted).

As noted above, the Court's ruling has the potential to interfere with the state's criminal prosecution. Nevertheless, four additional criteria must be met before *Younger* abstention is appropriate:

> First, the proceedings in the state court must be ongoing and judicial in nature. Secondly, the state proceedings must implicate important state interests. Third, the plaintiff must also have an adequate opportunity to present the constitutional issues of the federal claims in the state proceeding as well. Lastly, no extraordinary circumstances must exist that make it most appropriate to go forward in the federal court ...

*Fox v. Office of the Sheriff of Will County*, 2005 U.S. Dist. LEXIS 7980, No. 04 C 7309, 2005 WL 991901, at *2 (N.D. Ill. Apr. 13, 2005) (citations omitted).

First, the plaintiffs have been charged with battery and the case is pending in the Circuit Court of Cook County, thus the state proceeding is "ongoing and judicial in nature." Secondly, the court finds that the state has an interest in ensuring the safety of its citizenry and the plaintiffs' criminal battery trial implicates this important state concern. *See, e.g., McGladdery*, 1998 U.S. Dist. LEXIS 2240 at *4-*5 (finding that plaintiff's trial for aggravated battery implicated important state interests); *Fox*, 2005 U.S. Dist. LEXIS 7980, at *6 (noting that the state's interest in "criminal proceedings are important and traditional ..."). Regarding the third element, the essence of plaintiffs' complaint is that: (A) they were beaten and falsely arrested because of their sexual orientation; and (B) the defendants conspired to cover up the incident because Szura was a fellow police officer. Undoubtedly, these issues will be raised by the plaintiffs during their trial for battery and there is no reason to believe their claims will not be given full and proper consideration by the state court. *See, Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1254 (1975) (noting that "ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights").

Thus, the Court finds that the plaintiffs will have an opportunity to present their constitutional issues during the state proceeding.

Here, the first three elements needed for *Younger* abstention are easily satisfied. The final question – whether any extraordinary circumstances exist that would allow the federal case to go forward – is a closer question. The plaintiffs contend their arrest was in bad faith because the police were trying to protect a fellow officer. Moreover, the plaintiffs worry that if the federal case is stayed, they will lose important evidence: "without plaintiffs being able to [conduct discovery] key evidence including witnesses and witnesses' recollection of the incident, may be forever lost." (Pl. Resp. at 7).

First, the Court notes that the plaintiffs, the City and the police all have an interest in discovering and preventing incidents of police brutality. But, a stay in this proceeding will not prevent the plaintiffs from putting forth their version of events in state court. *See, Jane Doe v. City of Chicago*, 360 F. Supp. 2d 880 (N.D. Ill. 2005) (staying a civil proceeding despite a claim of police brutality because there was a pending criminal case involving the same subject matter). To defend against the battery charges, the plaintiffs will certainly avail themselves of the state court's subpoena power to obtain the 911 tapes and witnesses that supposedly demonstrate Szura's unprovoked attack. Moreover, to the extent that plaintiffs are worried about the destruction of evidence that is in the hands of the Illinois State Police, the Court will order that all documents including, but not limited to, tape recordings, police reports, witness statements and any other evidence relating to the altercation between plaintiffs and William Szura be preserved. The plaintiffs in this case have simply not demonstrated the extraordinary circumstances necessary to show that this case falls outside the scope of *Younger* abstention.

Given that the *Younger* doctrine is applicable to this case, the Court will now address whether it should be applied. In opposition to the motion to stay, the plaintiffs rely primarily on *Soriano v. Town of Cicero*, 2004 U.S. Dist. LEXIS 25352, No. 04 C 2774, 2004 WL 2966967, at *1 (N.D. Ill. Nov. 22, 2004). In *Soriano*, the plaintiff was arrested and charged with battery for attempting to use his car to strike some Cicero police officers. *Id.* at *2. Subsequently, the plaintiff filed a complaint in federal court and alleged that during his apprehension the police used excessive force when they shot him in the spine. The plaintiff then sought a stay of the federal proceeding until the resolution of his underlying criminal case.

The district court declined to apply *Younger* because it found that the plaintiff's civil claims would not interfere with the state's criminal case. *Id.* at *5. The court's reasoning was that there were really two separate phases of the altercation between plaintiff and the police. The first stage occurred when the plaintiff allegedly rammed him his car into the officers and the second stage occurred when the officers shot the plaintiff. Therefore, plaintiff's prosecution for battery stemmed from his conduct in the first stage and had no bearing on the plaintiff's complaint alleging police misconduct in the second stage. In other words, the federal court would only be considering whether the officers used a reasonable amount of force when they shot plaintiff, while the state court would only be considering plaintiff's criminal conduct *before* he was shot.[1] *Id.*

Plaintiffs' counsel was correct to bring *Soriano* to the Court's attention. But, here the events in question can not be bifurcated into separate stages. All of the plaintiffs'

---

[1] An analogous fact pattern occurred in *Holten v. City of Genoa*, 2003 U.S. Dist. LEXIS 11601, No. 02 C 50201, 2002 WL 32128773, at * 2 (N.D. Ill. July 8, 2002) (holding that *Younger* abstention was not appropriate where success on plaintiff's excessive force claim would not undermine the state court's prosecution of plaintiff for attempting to run over a police officer).

9

injuries and complaints stem from one singular indivisible event – the physical altercation with Szura. For example, in *Robinson* the plaintiff was arrested and charged with battery in the state court and subsequently sued the police in federal court alleging, *inter alia*, false arrest, battery and excessive force. 2004 U.S. Dist. LEXIS 17659 at *2. The court held abstention was appropriate because plaintiff's federal complaint was simply a "mirror image" of the charges pending against her in state court. *Id.* at *12. The court noted that *Younger* prevented a litigant from using the officer's conduct "as a shield to criminal liability" in state court and then, while the criminal case is still pending, using that same conduct as a "sword to impose civil liability" in federal court. *Id.*

Similar logic was used in *Mitts v. Marszewski*, where the court abstained pursuant to *Younger*: "the same incident and parties are involved in a pending criminal proceeding in state court, it is settled law that this court should abstain." No. 97-2029, 1998 U.S. Dist. LEXIS 495, 1998 WL 26151, at *2-3 (N.D. Ill. Jan. 14, 1998). The court premised its decision on the fact that:

> [T]he plaintiff has filed a civil action for damages against the sheriff's deputies who, in his case, he alleges used excessive force against him, and in the state criminal case, the state alleges that he committed aggravated battery ...

*Id.* at *3.

Where pending criminal charges are inextricably intertwined with the allegations contained in the plaintiffs' complaint, there is considerable potential for federal-state friction and the court should abstain. *Cf. Nelson v. Murphy*, 44 F.3d 497 (7th Cir. 1995) ("preserving a state's right to litigate criminal cases in its own courts is the core of the *Younger* doctrine"). For example, in order for the plaintiffs' to prevail on their § 1983 claims for false arrest they must show that the police arrested them without probable

cause. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) ("An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause.") Probable cause for the plaintiffs' arrest would exist if, as the state claims, there was evidence that the plaintiffs attacked Szura. Thus, the key issue that will be deliberated during the state criminal proceeding is which party committed the battery. To concurrently rehash this debate in the federal court is anathema to the federalism and comity concerns expressed in *Younger* and *Simpson*.

### III. CONCLUSION

The Court recognizes and embraces its role as a refuge for aggrieved individuals. Indeed, the plaintiffs, the police and the city of Chicago all have an interest in determining whether the plaintiffs were victims of a hate crime. The Court finds, however, that the plaintiffs will not be unfairly prejudiced by a stay in these proceedings. There is no expiration date on the rights conferred by the Constitution, and if they so choose, the plaintiffs will eventually have their day in federal court. But for now, the Court grants the defendants' motion to stay pending the resolution of the criminal charges against the plaintiffs. The parties are directed to alert the Court within 14 days of the resolution of the plaintiffs' case. The defendants are directed to preserve any and all documents that refer or relate to the altercation between plaintiffs and William Szura. IT IS SO ORDERED.

6/18/08
Dated

The Honorable William J. Hibbler
United States District Court

11