IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KELLY FUERY, DEBRA SCIORTINO,<br>and NICOLE TOMASKOVIC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 07 C 5428 |
| | ) | |
| v. | ) | |
| | ) | Judge Hibbler |
| CITY OF CHICAGO, a municipal | ) | Magistrate Judge Cox |
| corporation, OFFICER WILLIAM | ) | |
| SZURA, in his individual capacity, | ) | |
| SERGEANT CHRISTINE M. HITNEY, | ) | |
| in her individual capacity SENIOR | ) | |
| MASTER SERGEANT STUART | ) | |
| WEYFORTH, in his individual capacity, | ) | |
| SERGEANT MILOSLAVICH, in his | ) | |
| individual capacity, and STATE TROOPER | ) | |
| ARAGONES, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER AND AFFIRMATIVE DEFENSE OF DEFENDANTS
STUART WEYFORTH, MARTIN MILOSLAVICH AND GABRIEL ARAGONES
TO PLAINTIFFS' THIRD AMENDED COMPLAINT**

NOW COME Defendants STUART WEYFORTH, MARTIN MILOSLAVICH and

GABRIEL ARAGONES, by and through their attorney, LISA MADIGAN, Attorney General of

Illinois, and for their Answer and Affirmative Defense to Plaintiffs' Third Amended Complaint, state

as follows:

**Introduction**

1.      This is an action brought by Plaintiffs Kelly Fuery, Debra Sciortino, and Nicole
Tomaskovic as a result of the conduct of Defendant Police Officer William Szura on June 24, 2007
and the following conduct of all Defendants. Defendant William Szura maliciously beat all three
Plaintiffs and pulled gun on them and committed assault and battery against Plaintiffs. Defendant
William Szura committed assault and battery and a malicious hate crime against Plaintiffs because
of their gender and sexual orientation. Defendants City of Chicago, Sergeant Hitney, Officer
Fernandez, Senior Master Sergeant Stuart Weyforth, Sergeant Miloslavich, and State Trooper

Aragones, along with other members of the Chicago Police Department and the Illinois State Police, engaged in a cover-up to protect Defendant Police Officer Szura from criminal and civil prosecution, and further violated Plaintiffs' civil and constitutional rights by suppressing the evidence against Defendant Szura and perpetuating the code of silence among police officers in the City of Chicago and the Illinois State Police.

**ANSWER: Defendants admit that Plaintiffs Kelly Fuery, Debra Sciortino, and Nicole Tomaskovic bring this action against them and others. Defendants deny engaging in a cover-up to protect Defendant Police Office Szura from criminal and civil prosecution, deny suppressing evidence against Defendant Szura, and deny perpetuating an alleged code of silence among police officers in the City of Chicago or the Illinois State Police. Defendants deny violating Plaintiffs' civil rights at any time or in any way. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph one.**

2.     Plaintiffs Kelly Fuery, Debra Sciortino, and Nicole Tomaskovic seek redress for violations of their rights of equal protection based on their gender and sexual orientation under the Fourteenth Amendment to the United States Constitution as secured under the Civil Rights Act, 42 U.S.C. § 1983 and § 1988, 28 U.S.C. § 2201, et seq. (Count I); violations of their rights of equal protection under the Fourteenth Amendment to the United States Constitution as secured under the Civil Rights Act, 42 U.S.C. § 1983 and § 1988, 28 U.S.C. § 2201, et seq. (Count II); engaging in a conspiracy to violate Plaintiffs' rights under 42 U.S.C. §§ 1983 and 1985 (Count III); excessive force in violation of 42 U.S.C. § 1983 (Count IV); false arrest and unlawful detention in violation of 42 U.S.C. § 1983 (Count V); committing hate crimes against Plaintiffs in violation of Illinois law (Count VI); assault and battery in violation of Illinois law (County VII); false arrest and false imprisonment in violation of Illinois law (Count VIII); negligent supervision in violation of Illinois law (Count IX); malicious prosecution (Count X); and indemnification (Count XI). Plaintiffs seek declaratory and injunctive relief.

**ANSWER:  Defendants admit that the Plaintiff purports to bring this action under the laws alleged, but deny that they violated Plaintiffs' civil rights at any time or in any way.**

3.     Defendant Szura's assault and battery of Plaintiffs were the direct and proximate result of the pervasive and unconstitutional custom, practice, and policy of the City of Chicago in condoning violence against women, and failing to investigate, discipline or otherwise hold accountable its police officers for such conduct, and in doing so, Defendant City of Chicago condones and perpetuates such conduct by its officers, whether on or off duty.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph three.**

4.     Defendant Szura's assault and battery of Plaintiffs Fuery, Sciortino, and Tomaskovic were the direct and proximate result of the pervasive and unconstitutional custom, practice, and policy of the City of Chicago in failing to investigate, discipline, or otherwise hold accountable its

police officers, whether on duty or off duty. This custom, practice, and policy has engendered the firm understanding among Chicago Police Officers and supervisors, including Defendant William Szura, that they may commit crimes against and violate the rights of the citizens of the City of Chicago and the State of Illinois with impunity, and without fear of official consequences, and that their conduct will go unpunished by the City of Chicago Police Department.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph four.**

## Jurisdiction and Venue

5.     Jurisdiction of this Court is provided by 28 U.S.C. § 1331 and § 1343. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER: Defendants admit that this Court has jurisdiction over this action.**

6.     Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because Plaintiff and all Defendants reside in this District and all events giving rise to Plaintiffs claims occurred within this District.

**ANSWER: Defendants admit that venue is proper in this Court.**

## The Parties

7.     Plaintiff Kelly Fuery ("Fuery") is a female citizen of the state of Illinois and is a resident of this Judicial District.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph seven.**

8.     Plaintiff Debra Sciortino ("Sciortino") is a female citizen of the state of Illinois and is a resident of this Judicial District.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph eight.**

9.     Plaintiff Nicole Tomaskovic ("Tomaskovic") is a female citizen of the state of Illinois and is a resident of this Judicial District.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph nine.**

10.     Defendant City of Chicago ("City") is a municipality incorporated under the laws of the State of Illinois.

**ANSWER: Defendants admit the allegations contained in paragraph ten.**

      11.    Defendant William Szura ("Szura") is, upon information and belief, a resident of this Judicial District. Szura is employed by the Chicago Police Department as a police officer in the "mounted unit."

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph eleven.**

      12.    Defendant Szura was acting under color of law at all times relevant hereto.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twelve.**

      13.    Defendant Sergeant Christine M. Hitney ("Hitney") is, upon information and belief, a resident of this Judicial District. Defendant Hitney is employed by the Chicago Police Department as a Sergeant, and is a supervisor to Officer Szura.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirteen.**

      14.    Defendant Hitney at all times relevant hereto was acting under color of law.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fourteen.**

      15.    Defendant Senior Master Sergeant Stuart Weyforth ("Weyforth") is, upon information and belief, a resident of this Judicial District. Weyforth is employed by the Illinois State Police as a Senior Master Sergeant.

**ANSWER: Defendants admit that Weyforth is employed by the Illinois State Police and that he is a resident of this judicial district.  Answering further, Defendants state that at the time of the events alleged by Plaintiffs Weyforth was a Master Sergeant.**

      16.    Defendant Weyforth at all times relevant hereto was acting under color of law.

**ANSWER: Defendants admit the allegations contained in paragraph sixteen.**

      17.    Defendant Sergeant Miloslavich ("Miloslavich") is upon information and belief a resident of this Judicial District. Miloslavich is employed by the Illinois State Police as a Sergeant.

**ANSWER: Defendants admit that Miloslavich is employed by the Illinois State Police and that he is a resident of this judicial district.  Answering further, Defendants admit that the time of**

the events alleged by Plaintiffs Miloslavich was a Sergeant.

18.     Defendant Miloslavich at all times relevant hereto was acting under color of law.

**ANSWER: Defendants admit the allegations contained in paragraph eighteen.**

19.     Defendant Trooper Aragones (Star #5661) ("Aragones") is upon information and belief a resident of this Judicial District. Aragones is employed by the Illinois State Police as a State Trooper.

**ANSWER: Defendants admit the allegations contained in paragraph nineteen.**

20.     Defendant Aragonez at all times relevant hereto was acting under color of law.

**ANSWER: Defendants admit the allegations contained in paragraph twenty.**

**Facts Upon Which Claims Are Based**
**The Assault and Battery of Plaintiffs**

21.     On June 24, 2007, Plaintiffs Fuery, Sciortino, and Tomaskovic came to the City of Chicago to attend the Gay Pride Parade, which is considered a festival and celebration of diversity.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-one.**

22.     After the day's festivities, at approximately 7:30 p.m., Plaintiffs were headed home in two separate vehicles and were traveling south on 1-55.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-two.**

23.     Just before the Damen Street exit on I55, Sciortino and Fuery came upon a vehicle traveling 30 miles per hour in the far left lane of traffic, which they later learned was being driven by Defendant Szura.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-three.**

24.     Because Defendant Szura was traveling so slow in the far left lane of traffic, Plaintiff Fuery beeped her horn.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-four.**

25.     Defendant Szura slammed on his brakes coming to a complete stop on the interstate expressway.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-five.**

26.     Plaintiff Fuery attempted to get away from Defendant Szura by moving right to the middle lane, but Defendant Szura moved over to the middle lane of traffic, cutting them off and not letting them pass.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-six.**

27.     Defendant Szura repeatedly sped up and then slammed on his breaks, and made it impossible for Plaintiff Fuery to pass him on the interstate.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-seven.**

28.     Plaintiff Fuery again attempted to get away from Defendant Szura by moving to the far right lane of traffic, but Defendant Szura again cut her off and moved in front, of her vehicle in the far right lane of traffic. Defendant Szura again slammed on his breaks, causing Fuery to have to slam on her breaks to avoid hitting his vehicle.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-eight.**

29.     Defendant Szura continued to alternate speeding up and slamming on his breaks and would not let Plaintiff Fuery pass his vehicle on the expressway.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-nine.**

30.     Defendant Szura then used his vehicle to force Fuery to pull her car over on to the shoulder of the expressway.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty.**

31.     Defendant Szura jumped out of his vehicle and moved to Plaintiff Fuery's driver's side door.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-one.**

32. Defendant Szura was dressed in plain clothes, a white shirt and blue jeans.

**ANSWER: Defendants admit that at the time they arrived on scene Defendant Szura was dressed in plain clothes.**

33. As Defendant Szura approached Plaintiffs vehicle, Plaintiff Fuery exited her vehicle because she was afraid that she might get trapped in the vehicle by Defendant Szura.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-three.**

34. Upon Plaintiff Fuery exiting her vehicle, Defendant Szura started screaming and spitting in Plaintiff Fuery's face.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-four.**

35. Defendant Szura reeked of alcohol, and Plaintiff Fuery could smell alcohol on Defendant Szura's breath.

**ANSWER: Defendants deny that at the time they arrived on scene Defendant Szura smelled of alcohol. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph thirty-five.**

36. Defendant Szura had a rage in his eyes and started screaming at Plaintiff Fuery with slurred speech.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-six.**

37. As Defendant Szura was screaming in Plaintiff Fuery's face, he stuck a large silver handgun in her stomach, causing her to fear for her life.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-seven.**

38. Defendant Szura was screaming at Plaintiff Fuery, among other expletives, calling her a "Fucking Bitch" and "Fucking Dyke."

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-eight.**

39.     Plaintiff Sciortino exited the passenger side of her and Plaintiff Fuery's vehicle in fear for her life partner's life and physical safety; she ran over to the driver's side of the vehicle and put her body in between Plaintiff Fuery and Defendant Szura in an attempt to save her life partner. She pleaded with Defendant Szura to put the gun away and to get back in his vehicle.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph thirty-nine.**

40.     As Plaintiff Sciortino pleaded with him, Defendant Szura turned the handgun on Plaintiff Sciortino and screamed and spit in her face, saying "Fuck You!" "Shut the Fuck up," and proceeded to also call her a "Fucking Dyke" and "Fucking Bitch."

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty.**

41.     As Plaintiff Sciortino continued pleading with him to put the gun away and to get back in his vehicle, Defendant Szura then struck Plaintiff Sciortino across the side of her head and face with a roundhouse karate style punch, knocking her into the first lane of traffic on the expressway.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-one.**

42.     Defendant Szura hit Plaintiff Sciortino so hard that she fell and hit her head on the asphalt.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-two.**

43.     Plaintiff Fuery ran over to Plaintiff Sciortino to help her up and to move her out of the oncoming traffic on the expressway. As Plaintiff Fuery was attempting to help Plaintiff Sciortino up, Defendant Szura hit Fuery across the back of the neck and knocked down causing her to lose her balance.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-three.**

44.     Defendant Szura continued to yell at Plaintiffs Fuery and Sciortino, referring to them as "Bitches" and "Dykes," and "Fucking Bitches," and "Fucking Dykes," committing a hate crime against them because of their gender and sexual orientation.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-four.**

45. When Plaintiff Fuery asked, "Where do you get off hitting women?," Defendant Szura responded, "You are not women, you are fucking dykes."

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-five.**

46. While Plaintiffs Fuery and Sciortino were in the first lane of traffic as a result of Defendant Szura's battery of them, Plaintiff Tomaskovic passed on the expressway seeing Plaintiffs in the middle of the first lane of traffic on the expressway.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-six.**

47. Plaintiff Tomaskovic pulled over on the side of the expressway, scared for Plaintiffs Fuery's and Sciortino's safety and hoping to be able to help them to safety.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-seven.**

48. Plaintiffs Fuery and Sciortino got up and hurried off of the, expressway and towards the shoulder.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph forty-eight.**

49. Plaintiff Sciortino called 911.

**ANSWER: Defendants admit that a woman, believed to be Sciortino, called 911.**

50. Plaintiff Fuery attempted to get in the passenger side of her vehicle to move her car. However, Defendant Szura would not let her get in her car. Instead, Defendant Szura started chasing Plaintiff Fuery around her vehicle, screaming at her and threatening her with fear of bodily harm. Defendant Szura prevented Plaintiff Fuery from getting in her vehicle and from escaping his continued assault and battery.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty.**

51. Plaintiff Tomaskovic ran over by Fuery and pleaded with Defendant Szura to stay away from them. Plaintiffs tried to leave the scene to escape Szura's abuse and assault. Defendant Szura prevented them from leaving.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-one.**

52.     Defendant Szura pushed Plaintiff Tomaskovic into Plaintiff Fuery's vehicle and onto the hood of the car.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-two.**

53.     Plaintiff Tomaskovic again pleaded with Defendant Szura to get away from them and leave them alone.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-three.**

54.     Defendant Szura then turned his rage and hatred of women to Plaintiff Tomaskovic. Defendant Szura punched Plaintiff Tomaskovic in the face. Plaintiff Tomaskovic attempted to defend herself, but to no avail. Defendant Szura continued to assault and batter Plaintiff Tomaskovic.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-four.**

55.     At one point in his abuse of Plaintiffs, Defendant Szura had Plaintiff Tomaskovic in a chokehold. Plaintiff Tomaskovic pleaded to Defendant Szura to "Get off me," "You're chocking me," and "I can't breathe." Plaintiff Tomaskovic pleaded for her life.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-five.**

56.     Defendant Szura then used force, while having Plaintiff Tomaskovic in a choke hold, to push Plaintiff Tomaskovic on top of Plaintiff Sciortino, holding them both down on the ground.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-six.**

57.     Defendant Szura then yelled at both Plaintiffs Tomaskovic and Sciortino to "stay the Fuck down."

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph fifty-seven.**

58.     It was at this point that two police officers arrived who were employed by the Illinois State Police.

**ANSWER:  Defendants deny that two ISP officers arrived on the scene at the same time. Answering further, Defendants state that Miloslavich arrived on the scene first, followed some**

time thereafter by Aragones. Weyforth, arrived later.

59.     Plaintiff Fuery tried to run to Plaintiff Tomaskovic to help her, but the State Troopers stopped her.

**ANSWER: Defendants deny the allegations contained in paragraph fifty-nine.**

60.     As soon as the Illinois State Police ("State Troopers") arrived on the scene, Defendant Szura revealed that he was a Chicago Police Officer, repeating "I'm a cop," "I'm a cop."

**ANSWER: Defendants admit that Defendant Szura identified himself as an off duty Chicago Police Department officer to Miloslavich when Miloslavich arrived at the scene.**

### The Arrest of Plaintiffs

61.     In response to Defendant Szura stating that he was a police officer, the State Troopers handcuffed Plaintiffs Sciortino and Tomaskovic.

**ANSWER: Defendants deny that Sciortino and Tomaskovic were restrained because Defendant Szura identified himself as an off duty police officer. Defendants state that Sciortino and Tomaskovic were restrained because of their own conduct.**

62.     Plaintiffs Tomaskovic and Sciortino were both crying and trying to tell the State Troopers that it was Defendant Szura that was abusing and assaulting them.

**ANSWER: Defendants admit that Tomaskovic and Sciortino claimed that Szura pushed and/or hit them.**

63.     The State Troopers then said they had to wait for their "Manager" (Defendant Weyforth) to get there.

**ANSWER: Defendants deny that they had to, or did, wait for Weyforth to arrive before they could take any action. Defendants admit that Weyforth later arrived on the scene.**

64.     Defendant Weyforth arrived on the scene and questioned Plaintiffs about what happened. When Plaintiff Fuery attempting [sic] to tell Defendant Senior Master Sergeant Weyforth what happened, he stated in effect: "We're going to believe him over you. He is one of our men," referring to the fact that he was a fellow police officer.

**ANSWER: Defendants admit that after arriving at the scene Weyforth spoke with Plaintiffs and with Szura. Defendants deny the remaining allegations contained in paragraph sixty-four.**

65.     When Defendant Weyforth spoke with Defendant Szura, they both looked at Plaintiff Fuery and started laughing.

**ANSWER: Defendants admit that Weyforth spoke with Szura. Defendants deny the remaining allegations contained in paragraph sixty-five.**

66. Next Defendant Weyforth then spoke briefly with Plaintiff Tomaskovic. He walked away before Plaintiff Tomaskovic could tell him what happened.

**ANSWER: Defendants admit that Weyforth spoke with Tomaskovic. Defendants deny the remaining allegations contained in paragraph sixty-six.**

67. Defendant Weyforth told Plaintiff Tomaskovic that Defendant Szura was going to press charges against her and the other Plaintiffs, and then tongue-in-cheek, said, "Do you want to press charges?" When Tomaskovic said "Yes," Defendant Weyforth laughed at her and walked away.

**ANSWER: Defendants admit that Szura told Weyforth he wanted to press charges against Plaintiffs and that Plaintiff Tomaskovic told Weyforth she wanted to press charges against Szura. Defendants deny the remaining allegations contained in paragraph sixty-seven.**

68. When Defendant Weyforth spoke with Plaintiff Sciortino, he walked away before she finished telling him about Defendant Szura's attack on her and the other women. She also told him that Defendant Szura smelled of alcohol and was slurring his speech.

**ANSWER: Defendants admit that Weyforth spoke with Sciortino and that among the things Sciortino told Weyforth was Sciortino's belief that Szura smelled of alcohol. Defendants state that Weyforth thereafter was in close proximity to Szura and that he did not smell alcohol on Szura. Defendants deny the remaining allegations of paragraph sixty-eight.**

69. Defendant Weyforth stated to Plaintiff Sciortino in effect, "There was no way he was drinking because he was working all day."

**ANSWER: Defendants admit that Weyforth did not smell alcohol on Szura but that he asked Szura whether Szura had been drinking. Defendants state that Szura told them he had worked that day. Defendants admit that Weyforth told one of the Plaintiffs that Szura said he had been working that day. Defendants deny the remaining allegations contained in paragraph sixty-nine.**

70. Defendant Weyforth told Plaintiff Sciortino that despite her requests, she could not press charges against Defendant Szura.

**ANSWER: Defendants deny the allegations contained in paragraph seventy.**

71. Defendant Weyforth then ordered that Plaintiffs be arrested and charged with battery of Defendant Szura.

**ANSWER: Defendants admit the allegations contained in paragraph seventy-one.**

12

72.     Defendant Aragones wrote false police reports and fabricated information and evidence to cover Defendant Szura's wrongful and criminal acts.

**ANSWER: Defendants deny the allegations contained in paragraph seventy-two.**

73.     Defendant Sergeant Miloslavich also fabricated information and evidence to cover Defendant Szura's wrongful and criminal acts.

**ANSWER: Defendants deny the allegations contained in paragraph seventy-three.**

74.     Defendant Sergeant Hitney also arrived on the scene and while at the scene and subsequent to Plaintiffs' arrest assisted Defendant Szura and the other Defendants in fabricating evidence to cover up Defendant Szura's conduct and abuse of Plaintiffs.

**ANSWER: Defendants admit that while they were at the scene a female sergeant from the Chicago Police Department arrived.  Defendants are without sufficient knowledge or information to form a belief as to whether that person was Defendant Hitney.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph seventy-four.**

75.     Defendants Szura, Hitney, Fernandez, Weyforth, Miloslavich, and Aragones caused Plaintiffs  to be arrested and charged with battery without just cause or provocation and in violation of their rights of equal protection under the United States Constitution and under Illinois law.

**ANSWER: Defendants deny that they caused Plaintiffs to be arrested and charged with battery without just cause or provocation and in violation of Plaintiffs' rights of equal protection under the United States Constitution and under Illinois law.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph seventy-five.**

76.     Plaintiff Tomaskovic asked if Defendant Szura was going to be arrested, and she was told "No," despite the fact that Defendant Szura committed assault and battery and a hate crime against Plaintiffs.

**ANSWER: Defendants admit that Tomaskovic was told that Szura was not going to be arrested.  Defendants deny the remaining allegations contained in paragraph seventy-six.**

77.     Plaintiffs Tomaskovic, Fuery, and Sciortino were handcuffed, placed in the back of the squad car, and taken to the Chicago Police Station, 1st District.

**ANSWER: Defendants admit the allegations contained in paragraph seventy-seven.**

78.     Defendant Szura was never handcuffed and was allowed to leave in his own vehicle, despite Plaintiffs complaints that he reeked of alcohol, was slurring his speech, and appeared to be

under the influence of alcohol.

**ANSWER: Defendants admit that Szura was not handcuffed and that he drove to the Chicago Police Station, 1st District, in his own vehicle. Defendants admit that Sciortino stated she believed that Szura smelled of alcohol. Defendants state they were in close proximity to Szura and they did not smell alcohol on Szura. Defendants deny the remaining allegations contained in paragraph seventy-eight.**

### Continued Harassment against Plaintiffs

79.     Defendants arrested Plaintiff and transported them to the Chicago Police Department to be booked and processed.

**ANSWER: Defendants admit that Plaintiffs were arrested. Defendants admit that Plaintiffs were transported to the Chicago Police Station for processing. Defendants deny that Miloslavich or Weyforth transported Plaintiffs to the Chicago Police Station.**

80.     At the police station, Plaintiffs Fuery, Tomaskovic and Sciortino remained handcuffed while they were interrogated by the State Police.

**ANSWER: Defendants deny that they interrogated Plaintiffs while Plaintiffs were at the Chicago Police station. Defendants admit that Chicago Police Department regulations or policies require arrestees to be handcuffed while in the Police Station. Defendant Aragones denies that Plaintiffs were handcuffed the entire time they were at the Police Station. Defendants Miloslavich and Weyforth are without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiffs remained handcuffed the entire time while at the Chicago Police station.**

81.     Defendant Szura roamed the halls or sat at a desk while he laughed and talked with other officers and pointed at Plaintiffs mocking them the entire time.

**ANSWER: Defendant Aragones denies the allegations contained in paragraph eighty-one. Defendants Miloslavich and Weyforth are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph eighty-one.**

82.     During the time Plaintiffs were being held for booking and processing, Plaintiff Sciortino became very ill and vomited several times.

**ANSWER: Defendant Aragones denies the allegations contained in paragraph eighty-two. Defendants Miloslavich and Weyforth are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph eighty-two.**

83.     Defendants caused Plaintiffs to be held at the Chicago Police Department for almost twelve (12) hours and finally released on June 25, 2007.

**ANSWER: Defendants deny they caused Plaintiffs to be held at the Chicago Police Department for almost twelve hours. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph eighty-three.**

### Injuries of Plaintiffs

84.     After being released, Plaintiffs went home and went to sleep because they had not slept for over 24 hours. Immediately after waking up, Plaintiffs went to the emergency room.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph eighty-four.**

85.     Plaintiff Sciortino suffered a concussion, a post-concussion headache, cervical strain, sprained wrist, back pain, and a fractured rib.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph eighty-five.**

86.     Plaintiff Tomaskovic suffered a cervical strain and lumbar muscular strain. She was not able to work for three (3) days.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph eighty-six.**

87.     Plaintiff Fuery suffered a head injury and blunt trauma to the left ear.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph eighty-seven.**

88.     Plaintiffs have suffered severe emotional distress from the assault and battery and from the false arrest and trumped up charges in an effort to conceal Defendant Szura's rage and hatred against women and women based on their sexual orientation.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph eighty-eight.**

### City of Chicago's Failure to Investigate

89.     On or about June 26, 2007, Plaintiff Sciortino called the Chicago Police Department's Office of Professional Standards to report the beating.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph eighty-nine.**

90.     Plaintiffs' complaint was not thoroughly investigated.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph ninety.**

### Custom, Practice, and Policy of the City of Chicago

91.     The City of Chicago and Chicago Police Department have a pervasive and unconstitutional custom, practice and policy of condoning violence against women and gays, and failing to investigate, discipline or otherwise hold accountable its police officers for such conduct, and in doing so, Defendant City of Chicago condones and perpetuates such conduct by its officers, whether on or off duty. This policy is evidenced by the numerous cases (published, unpublished, and those that never went to court) over many years where women and gays are maliciously targeted and harassed by Chicago police officers followed by efforts by the City of Chicago and its police officers to cover up the misconduct. The pattern of constitutional violations includes, but is not limited to:

a.      *Monitor v. City of Chicago*, Case No. 86 C 0806 (N.D.Ill. 1987), where the plaintiff alleged Chicago police officers wrongfully arrested him and used excessive force because he is gay; *see also Nelson v. City of Chicago*, NO. 86 C 0806 (N.D.Ill. July 23, 1986).

b.      *Angel v. White*, Case No. 95 C 3412 (N.D.Ill.), where the plaintiffs alleged that they were unlawfully arrested and subjected to excessive force while arresting police officers called them "faggots" and other derogatory names based on their belief that they were homosexuals. After their arrest the officers filled out false police reports and attempted to cover up their misconduct.

c.      *Lyons v. Adams, et al*, Case No. 01 C 0202 (N.D. Ill.), where the plaintiff alleged that he was beaten without legal provocation by off-duty Chicago police officers because they saw him embrace a male acquaintance and believed that he was gay. The officers subsequently attempted to conceal their misconduct.

d.      *Ruppert v. Torres, et al*, Case No. 07 C 3343 (N.D. Ill.), where the plaintiff alleges that he was viciously beaten without provocation by off-duty Chicago police officers because of his sexual orientation, he was held for more than two days without food or water forcing him to drink from the toilet in his cell, and the officers made out various sworn false police reports, as well as false complaints resulting in various felony charges against the plaintiff including multiple counts of aggravated battery against police officers.

e.      *Obrycka v. City of Chicago, et al.*, Case No. 07 C 2372 (N.D. Ill), where a female bartender was savagely beaten on video tape by an off-duty Chicago police officer. The plaintiff alleges that the defendants attempted to cover-up their misconduct, tried to protect the offending officers from criminal charges, and failed to properly

investigate her complaints; *see also e.g., Badge of Dishonor*, Chicago Tribune 3/22/07.

f. *Bond v. Utreras, et al*, Case No. 04 C 2617 (N.D. Ill.), where the plaintiff alleged that from April 2003 until March 2004 several Chicago Police Officers sexually, verbally, and physically assaulted her; threatened to plant drugs on the plaintiff and placed her under arrest; desecrated her religious items; beat her teenage son; and forced her to watch as they coerced her son to beat another member of their community.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph ninety-one.**

### Malicious Prosecution of Plaintiffs

92.     On June 24, 2007, Defendant Szura, with the knowledge, consent, and approval of Defendants Defendants City of Chicago, Szura, Hitney, Weyforth, and Miloslavich, signed written complaints against each Plaintiff for battery.

**ANSWER: Defendants admit knowing that Szura signed written complaints against Plaintiffs for battery. Defendants deny the remaining allegations contained in paragraph ninety-two.**

93.     Plaintiffs were criminally charged and maliciously prosecuted for battery.

**ANSWER: Defendants admit that Plaintiffs were charged and prosecuted for battery. Defendants deny the remaining allegations contained in paragraph ninety-three.**

94.     Defendants City of Chicago, Szura, Hitney, Fernandez, Weyforth, and Miloslavich participated in the criminal prosecution of Plaintiffs, which was malicious and without probable cause.

**ANSWER: Defendants admit that Miloslavich and Aragones gave testimony at Plaintiffs' trial. Defendants deny the remaining allegations contained in paragraph ninety-four.**

95.     A criminal trial was held against all three Plaintiffs on September 12 and 15, 2008.

**ANSWER: Defendants admit the allegations contained in paragraph ninety-five.**

96.     During the criminal trial against Plaintiffs, Chicago Police Officer, Officer Jose Fernandez, who admitted that he was a friend of Defendant Szura's, gave false testimony under oath, claiming that he witnessed the incident in an attempt to bolster the charges against Plaintiffs. Officer Fernandez testified that he did not know which officer on the scene he left his contact information with, nor did he call 911 or make a report.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph ninety-six.**

97.    On September 15, 2008, Honorable Judge Donnelly dismissed the criminal charges against all three Plaintiffs Fuery, Sciortino, and Tomaskovic. In issuing his ruling on the criminal charges brought against Plaintiffs, Judge Donnelly stated, "not only was he (Officer Szura) impeached, but he attempted to worm out of the fact that he had signed and, therefore, had adopted the Injury on Duty report." Judge Donnelly also stated as to the Illinois State Trooper's testimony that the "court was shocked too that he was impeached. The Court has not seen State troopers often impeached in their own reports." Judge Donnelly found that Plaintiffs' testimony and statements were credible and corroborated and that the Officer's testimony was impeached on several occasions.

**ANSWER: Defendants admit that on September 15, 2008 Judge Donnelly found that the State had not proven its case beyond a reasonable doubt and dismissed the charges against the Plaintiffs. Defendants admit that, as to the statements contained within quotation marks, they are accurate transcriptions of some of the remarks made by Judge Donnelly on September 15, 2008.**

98.    Judge Donnelly held that Officer Fernandez's testimony was also incredible and that his testimony further impeached that of Officer Szura, "his friend."

**ANSWER: Defendants deny that the Judge Donnelly held that Officer Fernandez's testimony was incredible and/or impeaching. Defendants admit that Judge Donnelly stated that Fernandez contradicted the testimony of Szura as to the speed limit in the area.**

99.    No criminal charges were or have been filed against Defendant Szura.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph ninety-nine.**

100.    Defendant Szura has not been reprimanded and remains at work.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph one hundred.**

101.    As a result of Defendants' conduct, Plaintiffs suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph one hundred and three.**

18

## COUNT I
### (42 U.S.C. § 1983 - Equal Protection
### v. All Defendants)

102.     As to all Defendants, Plaintiffs restate and reallege by reference paragraphs 1 through 101 above as though fully set forth herein.

**ANSWER: Defendants restate and adopt their Answers to paragraphs one through one hundred and one as their Answer to paragraph one hundred and two as if set forth fully herein.**

103.     As described in the preceding paragraphs, the conduct of Defendant William Szura towards Plaintiffs Fuery, Sciortino, and Tomaskovic constituted a violation of the Equal Protection Clause of United States Constitution.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph one hundred and three.**

104.     Plaintiffs as women are members of a protected class. Defendants' conduct demonstrated discriminatory animus towards Plaintiffs.

**ANSWER: Defendants admit that women are a protected class. Defendants deny that their conduct demonstrated discriminatory animus towards Plaintiffs.  Defendants deny violating Plaintiffs' civil rights at any time or in anyway.**

105.     Plaintiffs as gay women are members of a protected class. Defendants' conduct demonstrated discriminatory animus towards Plaintiffs.

**ANSWER: Defendants admit that women are a protected class.  Defendants deny that gay women as a separate classification apart from gender are a protected class.  Defendants deny that their conduct demonstrated discriminatory animus towards Plaintiffs.  Defendants deny violating Plaintiffs' civil rights at any time or in any way.**

106.     Defendants' actions reflect a policy, custom, or pattern of official conduct of engaging in and condoning sexual harassment and discrimination of women based on their gender.

**ANSWER: Defendants deny the allegations contained in paragraph one hundred and six.**

107.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' Constitutional rights.

**ANSWER: Defendants deny the allegations contained in paragraph one hundred and seven.**

108.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiffs' rights.

19

**ANSWER: Defendants deny the allegations contained in paragraph one hundred and eight.**

109.     The actions of Defendants against Plaintiffs have caused Plaintiffs great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph one hundred and nine.**

WHEREFORE   Defendants STUART WEYFORTH, MARTIN MILOSLAVICH and

GABRIEL ARAGONES pray that judgment be entered in their favor and against Plaintiffs Fuery,

Sciortino, and Tomaskovic.

## COUNT II

### (42 U.S.C. § 1983 - Monell Liability
### v. City of Chicago)

**Defendants Weyforth, Miloslavich and Aragones make no answer to Count II of Plaintiff's Third Amended Complaint as Count II is not directed to them.  To the extent that an answer is required by them to Count II, Defendants deny the allegations contained in Count II.**

## COUNT III
### (42 U.S.C. §§ 1983, 1985 - Conspiracy
### v. All Defendants)

121.     As against all Defendants, Plaintiffs restate and reallege by reference paragraphs 1 through 101 above as though fully set forth herein.

**ANSWER:  Defendants restate and adopt their Answers to paragraphs one through one hundred and one as their Answer to paragraph one hundred twenty-one as if set forth fully herein.**

122.     As described herein, *supra*, Defendants City of Chicago, Szura, Hitney, Fernandez, Weyforth, Miloslavich, and Aragones agreed to protect Defendant Szura from being charged with criminal charges for assault and battery upon Plaintiffs and from being charged with a hate crime, which constitutes a Class 2 felony for the second or subsequent offense.

**ANSWER: Defendants deny the allegations contained in paragraph one hundred twenty-two.**

123. As described above, there is a custom of a "code of silence." This code is a tacit agreement between and among members of the Chicago Police Department, including the Office of Professional Standards and the law enforcement community, including Defendants Weyforth, Miloslavich, and Aragones, as members of the Illinois State Police, resulting in a refusal or failure to report instances of misconduct of which they are aware, including the use of unlawful force, despite their obligation to do so as sworn peace officers. This includes officers who fail to thoroughly investigate citizen complaints of excessive force or remain silent or give false or misleading information during official investigations in order to protect themselves or their fellow officers from discipline, criminal prosecution or civil liability.

**ANSWER: Defendants deny the allegations contained in paragraph one hundred twenty-three.**

124. It is the City's "custom and policy" not to conduct legitimate investigations of accused officers, and therefore concealing, or not discovering, incriminating evidence against officers.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph one hundred twenty-four.**

125. It was the City's widespread custom and policy that was the moving force behind Defendants' actions, described above, to not conduct a legitimate investigation, thus constituting the tacit agreement.

**ANSWER: Defendants deny the allegations contained in paragraph one hundred twenty-five.**

126. Defendants conspired with one another as set forth herein to violate Plaintiffs' civil rights.

**ANSWER: Defendants deny the allegations contained in paragraph one hundred twenty-six.**

127. Defendants acted in concert to violate Plaintiffs' constitutional rights, and thereby formed a conspiracy to deprive Plaintiffs of their constitutional rights.

**ANSWER: Defendants deny the allegations contained in paragraph one hundred twenty-seven.**

128. Defendants conspired to deprive Plaintiffs of their right to equal protection and to be free from excessive force and false arrest free speech under the Fourteenth Amendment to the Constitution of the United States.

**ANSWER: Defendants deny the allegations contained in paragraph one hundred twenty-eight.**

129. The actions of Defendants against Plaintiffs have caused Plaintiffs great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph one hundred twenty-nine.**

WHEREFORE Defendants STUART WEYFORTH, MARTIN MILOSLAVICH and

GABRIEL ARAGONES pray that judgment be entered in their favor and against Plaintiffs Fuery,

Sciortino, and Tomaskovic.

## COUNT IV

### (42 U.S.C. § 1983 - Excessive Force
### v. Defendants Szura and City of Chicago)

**Defendants Weyforth, Miloslavich and Aragones make no answer to Count IV of Plaintiff's Third Amended Complaint as Count IV is not directed to them. To the extent that an answer is required by them to Count IV, Defendants deny the allegations contained in Count IV.**

## <u>COUNT V</u>

### (42 U.S.C. § 1983 - False Arrest/Unlawful Detention
### v. All Defendants)

135. As to all Defendants, Plaintiffs restate and reallege by reference paragraphs 1 through 101 above as though fully set forth herein.

**ANSWER: Defendants restate and adopt their Answers to paragraphs one through one hundred and one as their Answer to paragraph one hundred thirty-five as if set forth fully herein.**

136. As described herein, *supra*, Defendants falsely arrested, or caused Plaintiffs to be falsely arrested and unlawfully detained without probable cause.

**ANSWER: Defendants deny the allegations contained in paragraph one hundred thirty-six.**

137. The misconduct described in this Court was undertaken by Defendants with malice, willfulness, and reckless indifference to the Plaintiffs' rights.

**ANSWER: Defendants deny the allegations contained in paragraph one hundred thirty-seven.**

138. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago Police Department, in the manner described in the preceding paragraphs.

**ANSWER: Defendants deny the allegations contained in paragraph one hundred thirty-eight.**

139.    The actions of Defendants against Plaintiffs have caused Plaintiffs great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph one hundred thirty-nine.**

WHEREFORE    Defendants STUART WEYFORTH, MARTIN MILOSLAVICH and

GABRIEL ARAGONES pray that judgment be entered in their favor and against Plaintiffs Fuery,

Sciortino, and Tomaskovic.

## STATE LAW SUPPLEMENTAL CLAIMS

## COUNT VI

### (Hate Crime v. Defendants City of Chicago and Szura)

**Defendants Weyforth, Miloslavich and Aragones make no answer to Count VI of Plaintiff's Third Amended Complaint as Count VI is not directed to them.  To the extent that an answer is required by them to Count VI, Defendants deny the allegations contained in Count VI.**

## COUNT VII

### (Assault and Battery
### v. Defendants City of Chicago and Szura)

**Defendants Weyforth, Miloslavich and Aragones make no answer to Count VII of Plaintiff's Third Amended Complaint as Count VII is not directed to them.  To the extent that an answer is required by them to Count VII, Defendants deny the allegations contained in Count VII.**

## COUNT VIII

### (False Arrest/ False Imprisonment
### v. All Defendants)

156.    As against all Defendants, Plaintiffs restate and reallege by reference paragraphs 1 through 101  above as though fully set forth herein.

23

**ANSWER: Defendants restate and adopt their Answers to paragraphs one through one hundred and one as their Answer to paragraph one hundred fifty-six as if set forth fully herein.**

157.     Plaintiffs were arrested and detained despite Defendants' knowledge that there was no lawful justification for doing so.

**ANSWER: Defendants deny the allegations contained in paragraph one hundred fifty-seven.**

158.     In the manner described herein, *supra*, Defendants unreasonably restrained Plaintiffs' liberty by detaining them for several hours at the jail.

**ANSWER: Defendants deny the allegations contained in paragraph one hundred fifty-eight.**

159.     As a result of this misconduct, Plaintiffs have suffered and continue to suffer damages, including but not limited to emotional distress and anguish.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph one hundred fifty-nine.**

160.     The misconduct set forth herein, *supra*, was undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights.

**ANSWER: Defendants deny the allegations contained in paragraph one hundred sixty.**

WHEREFORE   Defendants STUART WEYFORTH, MARTIN MILOSLAVICH and

GABRIEL ARAGONES pray that judgment be entered in their favor and against Plaintiffs Fuery,

Sciortino, and Tomaskovic.


## COUNT IX

**(Negligent Supervision
v. Defendant City of Chicago)**

**Defendants Weyforth, Miloslavich and Aragones make no answer to Count IX of Plaintiff's Third Amended Complaint as Count IX is not directed to them.  To the extent that an answer is required by them to Count IX, Defendants deny the allegations contained in Count IX.**

## COUNT X

### (Malicious Prosecution
### v. City of Chicago, Szura, Hitney, Fernandez, Weyforth, and Miloslavich)

Defendant Aragones makes no answer to Count X of Plaintiff's Third Amended Complaint as Count X is not directed to him.  To the extent that an answer is required by him to Count X, Defendant denies the allegations contained in Count X.

Defendants Weyforth and Miloslavich make no answer to Count X of Plaintiffs' Third Amended Complaint and move for its dismissal.  *See* Defendants' Motion to Dismiss Count X filed contemporaneously with Defendants' Answer.

## COUNT XI

### (Indemnification
### v. Defendant City of Chicago)

Defendants Weyforth, Miloslavich and Aragones make no answer to Count XI of Plaintiff's Third Amended Complaint as Count XI is not directed to them.  To the extent that an answer is required by them to Count XI, Defendants deny the allegations contained in Count XI.

## <u>AFFIRMATIVE DEFENSE</u>

Defendants Stuart Weyforth, Martin Miloslavich and Gabriel Aragones are entitled to qualified immunity as their conduct was objectively reasonable and did not violate any of Plaintiffs' clearly established constitutional rights.

**JURY DEMAND**

Defendants Stuart Weyforth, Martin Miloslavich and Gabriel Aragones request trial by jury.


WHEREFORE Defendants STUART WEYFORTH, MARTIN MILOSLAVICH and GABRIEL

ARAGONES pray that judgment be entered in their favor and against Plaintiffs Fuery, Sciortino, and

Tomaskovic.


Respectfully Submitted,


    /s/   Deborah J. Allen

LISA MADIGAN                 DEBORAH J. ALLEN

Attorney General             Assistant Attorney General

100 West Randolph Street, 13th floor

Chicago, Illinois 60601

(312) 814-3739