IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KELLY FUERY, DEBRA SCIORTINO, AND NICOLE TOMASKOVIC,<br><br>Plaintiffs<br><br>v.<br><br>CITY OF CHICAGO, CHICAGO POLICE OFFICER WILLIAM SZURA, SERGEANT CHRISTINE M. HITNEY, SENIOR MASTER SERGEANT STUART WEYFORTH, SERGEANT MILOSLAVICH, AND STATE TROOPER ARAGONES.<br><br>Defendants. | No. 07 C 5428<br><br>The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

Kelly Fuery, Debra Sciortino, and Nicole Tomaskovic sued the City of Chicago, two Chicago police officers, and three Illinois State Troopers. The Plaintiffs allege that an off-duty Chicago police officer, William Szura, beat them up on the Stevenson Expressway in Chicago, Illinois. Aggravating matters, the Plaintiffs allege Szura, another Chicago Police Officer, and several Illinois State Troopers then arrested Plaintiffs for battery and convinced a Cook County Prosecutor to prosecute them. Defendants Weyforth, Miloslavich, and Hitney move to dismiss the malicious prosecution count of Plaintiffs' claim against them. The gist of the Defendants' arguments is that the state's attorney and Defendant Szura were the parties who initiated the prosecution against the Plaintiffs while they did nothing other than effectuate the arrest of the Plaintiffs. The City of Chicago moves to dismiss the Plaintiffs' Complaint against it in its entirety.

1

Before proceeding to the merits of the motion, the Court will address what the Plaintiffs describe as a "scribners error" in their Third Amended Complaint. The Plaintiffs note that they fail to identify Aragones in the caption of Count X and ask the Court for leave to correct this error. Aragones protests, pointing out that the Plaintiffs were placed on notice of this error when the Defendants filed a motion to dismiss Count X of the Second Amended Complaint. Plaintiffs did have ample opportunity to correct this error. Nonetheless, despite the error in the caption of Count X of the Plaintiffs' Third Amended Complaint, the substance of the allegations contained within the complaint clearly suggest that the Plaintiffs intended to bring Count X against Aragones. The Court will not adhere slavishly to the labels placed upon the Plaintiffs' various claims, but instead look to the substance of their allegations. The Court also observes that the statute of limitations for the Plaintiffs' claim has yet to expire. Accordingly, the Court will allow Plaintiffs to amend their pleading to add Aragones to the caption of Count X and to Paragraphs 166 and 168 of the Third Amended Complaint.

Turning to the merits of the Defendants' motions, the Court accepts as true the Plaintiffs' allegations, interpreting them in the light most favorable to the Plaintiff. According to the Plaintiffs, Fuery and Sciortino were returning home on the Eisenhower Expressway, heading west and coming from downtown Chicago. They encountered an apparently intoxicated Szura, who was traveling in the far left lane of traffic at a pace of 30 mph. After beeping their horn at Szura in an effort to convince him to leave the left lane, Szura became enraged and used his car to intimidate and harass Fuery and Sciortino. Szura drove recklessly, repeatedly cutting them off and preventing their efforts to put distance between his vehicle and theirs. Eventually, Szura used his vehicle to force them onto the shoulder of the Stevenson Expressway.

Once Szura had forced the two Plaintiffs to the shoulder of the expressway, his behavior rapidly spiraled out of control. Szura exited his vehicle and brandished a handgun, pointing it at Fuery's stomach while screaming at her, calling her a "fucking bitch" and a "fucking dyke." Sciortino, who is Fuery's life-partner, attempted to get between Szura and Fuery, and so Szura directed his ire at her, calling her similar names and punching her in the face. The force of Szura's punch knocked Sciortino into the traffic of the expressway. When Fuery asked Szura if he "got off on hitting women," Szura shouted "you are not women, you are fucking dykes." Tomaskovic, who was friends with Fuery and Sciortino, stopped on the expressway to help her friends. When she approached Szura, he punched her in the face, placed her in a choke hold and then tackled both her and Sciortino. Szura told both Tomaskovic and Sciortino to "stay the fuck down."[1]

---

[1] In their reply brief, Weyforth and Miloslavich repeatedly mischaracterize the Plaintiffs' allegations. In the most flagrant of these mischaracterizations, they write that "[t]wo friends of Plaintiff Fuery's . . . joined in the fisticuffs." Through these mischaracterizations, Weyforth and Miloslavich attempt to plant the seed that the Plaintiffs were also to blame for the confrontation and that they somehow engaged in a physical altercation with Szura. Based solely on the allegations of the Third Amended Complaint, any implication that the Plaintiffs "joined" in the fisticuffs is patently absurd. Rather, Plaintiffs allege, quite clearly and unequivocally, that Szura beat them up. Weyforth and Miloslavich later invite the Court to weigh Plaintiffs' credibility, writing "[p]laintiffs would have this Court believe that all of this happened because of their gender and sexual orientation."

The Court will not countenance this attempt to repaint the allegations of the Third Amended Complaint. Nor will it evaluate the credibility of Plaintiffs' allegations in resolving a motion to dismiss. It is well understood that in resolving a motion to dismiss the Court must accept the factual allegations of a complaint as true and draw reasonable inferences in favor of the Plaintiffs. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). Weyforth and Miloslavich would have the Court disregard these rules and instead ask the Court interpret the allegations in *their* favor and also to assess the Plaintiffs' credibility. Defendants will have the opportunity to present their version of events at a later point in the litigation.

Sciortino managed to call 911, and eventually two Illinois State Troopers, Miloslavich and Aragones, arrived. Szura immediately informed them that he was a Chicago Police Officer and so the State Troopers handcuffed Sciortino and Tomaskovic. Shortly thereafter, Miloslavich's and Aragones's supervisor, Weyforth, arrived. When Fuery attempted to describe Szura's actions to Weyforth, he told her that the State Troopers would believe Szura over the Plaintiffs because he was one of "our men." Weyforth then spoke with Szura and laughed at Fuery. Later, Weyforth laughed at Tomaskovic when she requested that charges be brought against Szura. Ultimately, Weyforth ordered the arrest of all three Plaintiffs.

Around this time, an off-duty Chicago Police Officer, Christine Hitney, arrived. According to the Plaintiffs, Aragones and Miloslavich wrote false police reports and fabricated information and evidence to cover up Szura's acts. So too did Hitney. Szura signed a written complaint regarding the incident and the state's attorney prosecuted the three Plaintiffs for battery. At the criminal trial, Szura convinced his partner, who was not at the incident, to commit perjury and claim that he witnessed the event, in a brazen effort to bolster the charges leveled against the Plaintiffs. The state court judge was not duped and instead widely criticized Szura's credibility before dismissing the charges against the Plaintiffs.

*Malicious Prosecution Claim*

As noted earlier, all three individual Defendants argue that the Court should dismiss the Plaintiffs' malicious prosecution claim against them because the complaint contains no allegations that they did anything after arresting the Plaintiffs. To plead malicious prosecution, a plaintiff must allege more than an arrest without probable cause. *Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998). Instead, a plaintiff must allege that the officer took some improper act *after* arresting a plaintiff without

probable cause. *Id.*; *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996). This is because the State's Attorney, not the police, prosecutes a criminal action. *Reed*, 77 F.3d at 1053 (citing *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 816 n.5, 127 L.Ed.2d 114 (1994)). Consequently, a plaintiff must allege that police officers pressured or influenced a prosecutor to indict — through knowing misstatements, untruthful testimony,[2] or the cover-up or falsification of evidence. *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 901 (7th Cir. 2001); *Reed*, 77 F.3d at 1053-54.

Defendants' assertion that Plaintiffs have pleaded nothing other than the act of arresting them without probable cause is not accurate. Plaintiffs plead specifically that Defendants Hitney, Aragones and Miloslavich fabricated information and evidence to cover up Defendant Szura's criminal acts. Weyforth and Miloslavich argue that "merely providing false testimony" is not sufficient to overcome their immunity. However, Weyforth and Miloslavich improperly conflate "false testimony" with "fabrication of evidence." A corrupt police officer can tamper with evidence to encourage a prosecutor to take action without providing any testimony. Plaintiffs' allegations in this case are similar to those the Seventh Circuit has suggested would be sufficient to support a malicious prosecution claim. *See Sneed*, 146 F.3d at 481 (noting that plaintiff had not alleged that the detective falsified any information); *Reed*, 77 F.3d at 1053 (same).

Plaintiffs further allege that Weyforth refused to take a complaint from the Plaintiffs regarding Szura and informed them that his sole reason for doing so was because Szura was a police officer. In this sense, Weyforth withheld critical information from the prosecutor. Armed with this information, the prosecutor may very well have interviewed the Plaintiffs and decided to believe them rather than

---

[2] With the exception of "complaining witnesses," witnesses are absolutely immune for providing false testimony at trials or in pretrial proceedings. *See Briscoe v. Lahue*, 460 U.S. 409, 430, 96 S. Ct. 984, 47 L.Ed. 128 (1974); *Curtis v. Bambenek*, 48 F.3d 281, 285 (7th Cir. 1995).

Szura. The prosecutor's decision to indict does not shield a police officer "who deliberately supplied misinformation that influenced the decision." *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988).

Defendants Weyforth and Miloslavich also argue that Plaintiffs' pleadings are no more than "formulaic recitation of the elements . . . [without] necessary facts supporting [their] conclusions." Similarly, Hitney argues that Plaintiffs allegations are too conclusory to withstand the motion to dismiss. The Court disagrees. Although the Supreme Court recently revisited the federal pleading standard articulated in *Conley v. Gibson*, it made clear that it was not redefining the pleading standard to "require heightened fact pleading of specifics." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Rule 8 requires only a short and plain statement of a claim and the grounds upon which it rests, and need only contain sufficient factual detail to show that the claim is plausible rather than speculative. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081-83 (7th Cir.2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Contrary to Defendants' arguments, Plaintiffs have pleaded facts: that Miloslavich, Aragones, and Hitney fabricated evidence and that Weyforth withheld evidence from the prosecutors. Albeit general, these are facts (and not conclusions of law) that sufficiently inform Defendants of Plaintiffs' claims against them and which, if true, make Plaintiffs' right to relief more than speculative. Consequently, the Court DENIES their motion to dismiss.

*Monell Claims*

The City argues that Plaintiffs have not pleaded sufficient facts to state any *Monell* claims against it. To state a viable § 1983 claim against a municipality, plaintiffs must allege that their injury was caused by: 1) an express policy; 2) a widespread practice that, while not authorized by law, is so

permanent and well-settled it constitutes a custom or policy; or 3) a person with final decision-making authority. *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008). Section 1983 claims, however, are not subject to any heightened pleading requirements, and a plaintiff need not plead evidence to support their claim. Rather, the plaintiff must plead sufficient allegations to allow the court and defendants to understand the gravamen of the complaint and to raise the right to relief beyond mere speculation. *Bryant v. Oak Forest High Sch. Dist. 228, Bd. Of Educ.*, No. 06 C 5697, 2007 WL 2738544, at * 3 (Sep. 12, 2007) (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 96 S.Ct. 1955, 67 L.Ed.2d 929 (2007) & *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)).

Here, Plaintiffs allege that the City caused the constitutional deprivations because of a widespread practice or custom. Specifically, Plaintiffs allege that the City looks the other way whenever its officers violate the constitutional rights of women or gays. They further allege that the City's refusal to investigate allegations by women or gays leads to further police misconduct. In addition, they allege that even when misconduct by police is brought to the City's attention, the City fails to discipline officers who engage in such misconduct, which further emboldens officers to act with malicious intent. Finally, the Plaintiffs allege that Szura acted pursuant to these customs, believing himself to be above the law.

The City first argues that Plaintiffs have not properly pleaded a wide spread custom and practice of covering up misconduct by its police officers simply because Plaintiffs have identified only six lawsuits in a 24 year period. The Plaintiffs' allegations, however, are not so limited. The Plaintiffs allege that the City's pattern of constitutional violations includes, *but is not limited to*, those lawsuits.

More importantly, the City's argument invites the Court to evaluate the Plaintiffs' proof of the *Monell* claims at the pleading stage. The City would have the Court weigh the Plaintiffs' evidence on the basis of their allegations, permitting them no opportunity to flesh out their theory through participation in discovery. In essence, the City asks the Court to conclude that because the Plaintiffs have pleaded the existence of only six lawsuits, they will be unable to substantiate their claim that the City engages in a widespread coverup of police misconduct directed towards gays and women.

Notice pleading, however, does not require the Plaintiffs to lay out all of their proofs. It requires only that they make sufficient allegations to raise their right to relief above the level of sheer speculation. This is not a case in which Plaintiffs have made only a conclusory allegation regarding an unidentified policy or practice. *See, e.g., Fursteneau v. City of Naperville*, No. 07-C-6143, 2008 WL 5412872, * 4 (N.D. Ill. Dec. 23, 2008) (plaintiff alleged only that municipality acted pursuant to a policy or practice and not that municipality had a policy of arresting individuals without probable cause or discriminating against certain individuals). The Court declines the City's invitation to speculate about what the Plaintiffs may or may not be able to prove at a later point in the litigation

In this case, the Plaintiffs have made clear the factual basis under which the City would be liable for the actions of the individual Defendants. The Plaintiffs allege that the City has a widespread practice of failing to discipline or investigate officer misconduct directed towards women or gays. Second, Plaintiffs have provided a bridge linking this alleged practice to their injuries in the form of their allegations regarding Szura's conduct. It is more than plausible to infer that Szura believed that he was above the law from the allegations of the Complaint: he drove while drunk; he believed himself more important than other drivers on the road; when confronted he acted aggressively and abusively; when other officers arrived he immediately mentioned his role as a police officer to avoid punishment

for or even investigation of his misdeeds; he enlisted the aid of other law enforcement officials (including some who were not even at the scene) to cover-up his wrongful acts; and other law enforcement officials willingly provided this aid. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (where claim that a "code of silence" and inadequate investigation proceeded to summary judgment). The Court DENIES the City's Motion to Dismiss the Plaintiffs' *Monell* claims on the grounds that they are insufficiently pleaded. The Court also DENIES the City's Motion to Dismiss the Plaintiffs' state law claims as this argument depends solely upon the dismissal of the *Monell* claims.

The City also argues that Count II of the Plaintiffs' Complaint is duplicative. Plaintiffs bring Counts I, III, IV, and V against all Defendants. These Counts specify the underlying Constitutional violations committed by the individual officers. Count II, on the other hand, specifies no underlying Constitutional allegations. Rather, it identifies the policies and practices of the City of Chicago that Plaintiffs allege caused the underlying Constitutional violations.

Plaintiffs label Count II as "(42 U.S.C. § 1983 – Monell Liability)." *Monell*, however, does not provide a cause of action. Instead, it provides the theory under which a municipality might be liable for its employees' Constitutional violations. The Plaintiffs have already alleged that the City is liable for the underlying Constitutional violations described in Counts I, III, IV, and V — they state those counts are brought against "all Defendants," not limiting the recovery sought to that from individual defendants. Thus, Count II either duplicates the claims brought in Counts I, III, IV, and V or states only a theory under which Plaintiffs might recover for other Constitutional violations but does not present a viable claim in and of itself.

Accordingly, for clarity's sake, the Court requires the Plaintiffs to amend their Complaint. If the Plaintiffs wish to retain Count II, they must limit the recovery sought in Counts I, III, IV and V to

that from individual defendants (and make clear the underlying Constitutional violations they seek to recover for in Count II). On the other hand, the Plaintiffs may eliminate Count II as a separate claim by incorporating the factual allegations of that Count as necessary in other parts of the Complaint and continuing to pursue Counts I, III, IV, and V against all defendants.

Next the City moves to strike the Plaintiffs' request for injunctive relief in Count I-VI, citing *Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985). Plaintiffs complain largely of past exposure to illegal conduct. Standing to seek injunction against future conduct cannot be premised on past exposure to illegal conduct, and a plaintiff must allege more than a hypothetical or speculative future harm. *O'Shea v. Littleton*, 414 U.S. 488, 495, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). The Court strikes the Plaintiffs' requests for injunctive relief in Count I-VI.

Finally, the City argues that the Plaintiffs fail to state a state-law claim for negligent supervision. The Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 *et seq.*, bars claims of negligent supervision. 745 ILCS 10/2-201; *Reed v. City of Chicago*, No. 01 C 7865, 2002 WL 406983, at *2-3 (Mar. 14, 2002). Plaintiffs argue that the Immunity Act does not bar claims that do not sound strictly in negligence. As a general principle, Plaintiffs are correct. Their negligent supervision claim, however, does sound strictly in negligence: they allege that the City *knew or should have known* that Szura was unfit to be a police officer and breached the duty of care both in hiring him, failing to supervise him, and in retaining. Plaintiffs employ the language of negligence. The Plaintiffs make no claim that the City knew that Szura was a rogue police officer and that it willfully and wantonly ignored the consequences of failing to discipline him, specifically. *Cf Sandra T.E. v. Sperlik*, No. 05 C 473, 2005 WL 3299807, at *3 (Nov. 30, 2005) (plaintiffs alleged that school district knew that teacher was

molesting children in his classroom but failed to take action). Therefore, the Court DISMISSES Count IX with prejudice.

IT IS SO ORDERED.

_5/6/09_
Dated
5-6-2009

Hon. William J. Hibbler
United States District Court