UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KELLY FUERY, DEBRA SCIORTINO, and NICOLE TOMASKOVIC,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO, a municipal corporation, OFFICER WILLIAM SZURA, in his individual capacity, SENIOR MASTER SERGEANT STUART WEYFORTH, in his individual capacity, SERGEANT MILOSLAVICH, in his individual capacity, and STATE TROOPER ARAGONES, in his individual capacity<br><br>Defendants. | No. 07 C 5428<br><br>Judge Sara L. Ellis |

## OPINION AND ORDER

This case arises from a June 2007 altercation between Defendant William Szura, an off-duty Chicago police officer, and Plaintiffs, three women returning home from the gay pride parade in Chicago, Illinois. In their Fourth Amended Complaint, the operative pleading, Plaintiffs assert various federal and state law claims against Szura, the City of Chicago (the "City"), and three state police officers.[1] On October 15, 2012, Judge Bucklo, before whom the case was pending prior to its transfer to this Court, bifurcated Plaintiffs' *Monell* claims for discovery and trial. Doc. 212. Plaintiffs now ask the Court to reconsider Judge Bucklo's decision to bifurcate their *Monell* claims for discovery and trial. Plaintiffs posit that, despite Judge Bucklo's bifurcation order, *Monell* discovery is complete and the parties are prepared to proceed to trial on the *Monell* claims. The City opposes Plaintiffs' motion. Plaintiff's motion to reconsider is denied.

---

[1] Plaintiffs also asserted claims against two other Chicago police officers, but their motion for summary judgment was granted.

1

Plaintiffs do not present their motion under the traditional motion for reconsideration standard. Under that standard, reconsideration is "only appropriate where the court has misunderstood a party, where a court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)), *overruled on other grounds*, *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). Although Plaintiffs have not presented a valid basis for reconsideration of Judge Bucklo's decision under this standard, the Court will nonetheless address their arguments.

Rule 42(b) allows the Court to bifurcate a trial "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (bifurcation appropriate if it will "prevent prejudice to a party or promote judicial economy"). "Only one of [these] criteria need be satisfied for a court to order a separate trial." *Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir. 1994) (quoting *DeWitt, Porter, Huggett v. Kovalic*, 991 F.2d 1243, 1245 (7th Cir. 1993)). The Court has considerable discretion in deciding whether to bifurcate a trial. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000).

First, Plaintiffs contend that bifurcation is not appropriate because it would not further judicial economy. They maintain that regardless of the disposition of their § 1983 equal protection, false arrest, and excessive force claims against Szura, a second trial on these same claims will be necessary against the City. Plaintiffs rely on *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293 (7th Cir. 2010), in which the Seventh Circuit stated that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a

finding would create an *inconsistent* verdict." *Id.* at 305. The Seventh Circuit further stated that to determine whether the City's liability is dependent on that of its officers, the Court looks to "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.* In *Thomas*, the plaintiff claimed deliberate indifference, alleging that the County had a policy or practice of understaffing that caused systemic failures to respond to medical requests. *Id.* The Seventh Circuit concluded that it was not inconsistent for a jury to find that the individual defendants were not deliberately indifferent to the prisoner's medical needs but rather that they "simply could not respond adequately because of the well-documented breakdowns in the County's policies for retrieving medical request forms." *Id.* Instead, the jury could find that County's policies were the driving force behind the constitutional violation alleged. *Id.*

Typically, however, a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986). That is the case presented by Plaintiffs here, who are not alleging that the City has a general custom or policy carried out by Szura of using excessive force against women or gay women, of falsely arresting women or gay women, or of generally discriminating against women or gay women. Instead, Plaintiffs allege that Szura used excessive force against them, falsely arrested them and caused them to be unlawfully detained, and illegally targeted them by virtue of their being women and gay in violation of the Equal Protection Clause. Their *Monell* claims are premised on allegations that the City allowed Szura's violations to occur through its policies of, among others, concealing and suppressing officer misconduct, investigating complaints against off-duty officers differently than complaints against other citizens, failing to maintain accurate records of complaints, and allowing a "code of silence" to exist in the Chicago Police Department. But unlike in *Thomas*, the alleged harm to

3

Plaintiffs was not caused independently by these alleged City policies but rather through Szura's actions, and thus Szura must first be found liable before the City may be held liable on Plaintiffs' *Monell* claims. *See Veal v. Kachiroubas*, No. 12 C 8342, 2014 WL 321708, at *3 (N.D. Ill. Jan. 29, 2014) ("[E]ven if the absence of policy may be the source of the violation of civil rights, there is no injury to Veal without officer misconduct."); *Taylor v. Kachiroubas*, Nos. 12 C 8321, 12 C 8349, 2013 WL 6050492, at *4 (N.D. Ill. Nov. 15, 2013) ("Here, however, the actions of the individual officers in collecting and fabricating evidence against Sharp and Taylor are the source of the alleged harm to the plaintiffs, and any 'policy' exerted harm through those actions, not independently of them."); *Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 930 (N.D. Ill. 2012) (excessive force *Monell* claims require finding of underlying constitutional violation); *Castillo v. City of Chicago*, No. 11 C 7359, 2012 WL 1658350, at *4 (N.D. Ill. May 11, 2012) ("Municipal liability arising in the context of an arrest depends on a determination that one or more municipal employees violated the plaintiff's constitutional rights."). To the extent Plaintiffs also allege the City had a policy of failure to train its police officers, the Seventh Circuit has stated since *Thomas* that "a municipality cannot be liable under *Monell* [for failure to train] where there is no underlying constitutional violation by a municipal employee." *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010). And although municipal liability may be possible absent individual liability where the individual has asserted qualified immunity, *Thomas*, 604 F.3d at 304–05, Szura has not asserted a qualified immunity defense, *see* Doc. 119 (Szura's answer and affirmative defenses).

Plaintiffs' reliance on *Obrycka v. City of Chicago,* No. 07 C 2372, 2012 WL 601810 (N.D. Ill. Feb. 23, 2012) is not persuasive. Initially, the court found that the City did not properly develop its *Heller* argument requiring an underlying constitutional violation by the

defendant officer prior to a finding of municipal liability by first raising the argument in its reply brief and only in a footnote. *Obrycka*, 2012 WL 601810 at *11. The court summarily rejected the City's argument without discussion and cited to *Thomas*. *Id*. Unlike the factual scenario in *Obrycka* where the plaintiff alleged that her injury was caused by the subsequent cover-up of the incident of which the defendant officer played no part and was the basis of the plaintiff's equal protection claim, here, Plaintiffs allege that their injury directly resulted from Surza targeting them during this violent encounter because they are women and gay. Doc. 110, ¶¶ 46, 92 ("Defendant Surza continued to yell at Plaintiffs Fuery and Sciortino, referring to them as "Bitches" and "Dykes," and "Fucking Bitches" and "Fucking Dykes," committing a hate crime against them because of their gender and sexual orientation." "Plaintiffs have suffered severe emotional distress from the assault and battery and from the false arrest and trumped up charges in an effort to conceal Defendant Szura's rage and hatred against women and women based on their sexual orientation.") While Plaintiffs assert that they, like the plaintiff in *Obrycka*, have alleged a subsequent cover-up, a review of the remaining counts in the Fourth Amended Complaint belies that assertion. Plaintiffs have failed to allege any cover-up after Surza allegedly battered them. Plaintiffs' claims are factually and legally distinct from those in *Obrycka*, such that the Court finds there would be an inconsistent verdict if the jury found the City liable based on its *de facto* policy, but not Surza for his own conduct.

Thus, because Plaintiffs may only proceed on their *Monell* claims against the City if they prevail on their § 1983 claims against Szura, a second trial would not be necessary regardless of the outcome of the first. Substantial time and expense may be saved if a jury finds, for example, that Szura was not acting within the scope of his employment or under color of state law, thus foregoing the need for a trial on the *Monell* claims. Alternatively, if Plaintiffs prevails, the

parties may determine after the conclusion of the trial on the individual § 1983 claims to forego the expense of a second trial on the *Monell* claims as Plaintiffs would have obtained the monetary recovery to which they are entitled.

Next, Plaintiffs argue that the evidence required to present their claims against Szura will substantially overlap with the evidence required to establish their *Monell* claims against the City. They contend that to prevail on their claims against Szura, they will have to demonstrate that he was acting under color of law and within the scope of his employment, which will necessarily include evidence regarding the scope of authority the City vests in its police officers as a matter of policy or custom. They also maintain that to present their malicious prosecution claim they will have to present evidence of the City's customs and practices regarding covering up police misconduct. Such evidence, according to Plaintiffs, will overlap significantly with the *Monell* evidence regarding City policies of failing to investigate and discipline and the "code of silence." But the presentation of broad evidence of City customs and policies, in the abstract, is not appropriate to prove Plaintiffs' claims against Szura. Introduction of such evidence poses the danger of undue prejudice to Szura and the other individual Defendants, who are not City employees and thus should not be associated with the alleged City policies. *See Veal*, 2014 WL 321708, at *6 ("Presenting evidence to the jury regarding a village-wide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating the perception that the police department routinely acts improperly, even if the officers acted properly in this case."); *Demouchette v. Dart*, No. 09 C 6016, 2011 WL 679914, at *10 (N.D. Ill. Feb. 16, 2011) ("Plaintiff's obvious intent to introduce similar evidence of problems at the CCDC leads the Court to conclude that, without bifurcating the *Monell* claims under these facts, the individual defendants could face unusual difficulty in

distinguishing their own acts that allegedly violated Plaintiff's constitutional rights from evidence that would be introduced to support claims against the County."); *Lopez v. City of Chicago*, No. 01 C 1823, 2002 WL 335346, at *2 (N.D. Ill. Mar. 1, 2002) ("Without bifurcation, the jury would likely hear evidence against the City of various acts of alleged policy misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants."). Having considered the claims at issue and the possibility of unfair prejudice, the Court fails to see the substantial overlap of evidence that Plaintiffs maintain warrants holding one trial.

Third, Plaintiffs argue that no prejudice will result from having the individual and *Monell* claims tried together and instead that they will be prejudiced by the delay in having the claims tried separately. The Court disagrees, however, as already discussed in connection with the alleged overlap of evidence. Introduction of the *Monell* claims will prejudice the individual Defendants, particularly the state police officers, who have no involvement with the alleged City policies.[2] Plaintiffs and the City have both proffered experts on the City's policies, and the trial of the *Monell* claims will essentially involve a mini-trial on questions not necessary to the resolution of the remainder of the claims. *Monell* evidence will draw the jury's attention away from resolving the underlying issues of an incident that occurred over seven years ago. Injecting the *Monell* issues into the trial will make the case more complicated and potentially cause juror confusion. And although the City did include *Monell* exhibits and instructions in the proposed pretrial order in response to Plaintiffs' motion to reconsider bifurcation, this does not mean that the City would not be prejudiced by the Court now deciding to try the claims together, particularly as the City had not moved for summary judgment on the *Monell* claims based on

---

[2] The Court's view on the prejudice question is not affected by Szura's statement that bifurcation is not appropriate in the matter, *see* Doc. 337, or the fact that the state police officers did not file an opposition to the motion.

7

Judge Bucklo's bifurcation order. Moreover, any delay in having the *Monell* claims separately tried does not warrant reversing the bifurcation decision. Although the Court was prepared to hold a trial in this case immediately upon transfer, that has not occurred for unforeseen circumstances outside of anyone's control. But the fact that this case was pending for seven years before those circumstances arose does not now warrant changing course on the bifurcation decision, particularly where Plaintiffs only moved for reconsideration of the bifurcation motion approximately three months before the originally scheduled trial date, with full knowledge that the City had made known in its summary judgment motions that it intended to file a summary judgment motion on the *Monell* claims after resolution of the individual claims.

Finally, Plaintiffs contend that their Seventh Amendment rights will be violated by a bifurcated trial. Plaintiffs claim that a jury in a second trial on the *Monell* claims would be asked to determine for a second time whether Szura was acting under color of law. But because the only way that the City could be liable under § 1983 is if the jury in the first trial found that Szura was acting under color of law, a jury in the second trial would not be asked to decide this issue again. *See* Doc. 315 at 12 (the City's acknowledgment that "the jury's decision on whether Szura was acting under 'color of law' will bind the parties with respect to Plaintiffs' *Monell* claims"). Thus, Plaintiffs' Seventh Amendment rights would not be violated by a bifurcated trial.

Because the Court continues to find bifurcation of the *Monell* claims appropriate, Plaintiffs' motion to reconsider bifurcation of discovery and trial [300] is denied. The parties' motions in limine [281, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 298, 301, 302, 303, 304, 305, 306] are denied without prejudice to refiling in accordance

8

with this Court's procedures for pretrial orders and motions. A date for the filing of a revised pretrial order will be set if settlement is not successful.

Dated: February 17, 2015

SARA L. ELLIS
United States District Judge